By the Court,

Cowen, J.
The bona fides of the proceedings before the recorder and the assignment of the 30th of August
*579 are not questioned. Indeed, so far from these being intended as a fraud against .the proceedings in bankruptcy, the inference would rathér be that the main design of resorting to the latter was to defeat the plaintiff’s remedy under the non-imprisonment act. Therefore, if the law under which the plaintiff assumed to proceed be a subsisting one, and the doctrine of relation does not apply, the motion should be granted.
Whether the non-imprisonment act (§ 10 subd. 4) be an insolvent law within the meaning of Eames' case, (5 Law Reporter, 117,) and other cases referred to on the argument, depends upon the purpose and object of the statute. When the learned judges of the United States say that the bankrupt law has effaced or suspended all state insolvent laws, they certainly cannot mean a statute for the more effectual appropriation of a debtor’s property to satisfy an individual debt. Such a construction would subvert all judgments and executions for debts, which are always against insolvents, and are creatures of an insolvent law, if these words be taken in their broadest sense. (Vide 2 Bell’s Comm. 162.) Clearly, therefore, our insolvent laws are no farther suspended than they seek, upon notorious grounds, to seize and distribute the effects of the debtor among his creditors generally. Such is not the effect of that branch of the non-imprisonment law now in question. It refers to Art. 6th of the revised statutes concerning voluntary assignments by imprisoned debtors, following out, in the main, such details as are there prescribed, and finally, it is true, directing a dividend; but this cannot, in the nature of things, nor indeed by the provisions of the statute, be extended beyond the particular creditor or creditors by whom the debtor is pursued. We have always understood the provisions in question as no more than a statute execution against choses in action and other effects not tangible by the ordinary fi. fa. The statute gives the creditor or creditors certain process by which he or they may coerce the payment of a debt or debts for which the debtor has been prosecuted. (The People ex rel. Noble v. Abel, 3 Hill, 109, 112 ; Pract. Directions, &c. under the Non Imp. Act,
*580 Parnph. p. 15.) We accordingly, at the last January term, on a prisoner béing brought up for discharge under the 6th article, granted the motion, notwithstanding the objection that our insolvent laws are all suspended. Looking at the United States statute as we should to a state insolvent law—and, when applied to voluntary applicants, it is no more—we then have a general cessio bonorum indeed ; but one which, in its own nature, and according to the general, not to say universal rule of construction, can have no effect as of a time prior to the decree by which it was effected. Such a construction would leave the assignment to Valentine untouched. Nor do I perceive that the doctrine of relation declared in 13 Eliz. ch. 7, § 2, and continued in the subsequent bankrupt laws of England, is expressly enacted by the U. S. bankrupt law. If applicable, however, whether by enactment or construction, it is decisive against the present motion. (See Balme v. Hutton, 1 Cromp. Sf Mees. 262, 269, 270 ; Cooper v. Chitty, 1 Burr. 20, 30, 31, 1 Keny. Rep. 395, 417, 418, S. C.; Price v. Helyar, 1 Moore fy Payne, 541, 552, 4 Bing. 597, S. C.)
Here was neither a right of lien in the plaintiff, nor was the interest of the defendant divested until the assignment of the 30th of August made pursuant to the order of the recorder. Five days before, (August 25th,) the petition in bankruptcy was lodged in the U. S. district court. This was, no doubt, an act of bankruptcy ; perhaps the only act which can be recognized as such under the voluntary branch of the statute. (See St. 6 Geo. 4, ch. 16, § 6.) Upon the best consideration, however, which I have been able to give the question, I have failed to discover any principle in our statute of bankruptcy, or in the nature of the case, by which the legislature can be understood to have intended a relation covering property of the bankrupt which he did not own at the time of the bankrupt assignment, excepting such as he might have fraudulently transferred contrary to the express provisions of the second section, or, at most, voluntarily transferred within the time there mentioned, the transfer being bona fide. Independently of *581 these provisions, I understand the act as indicating quite clearly that the bankrupt assignment shall have no greater effect than any other general transfer. That it is a bankrupt act, certainly implies no relation. This is plain, not only from the necessity of expressly declaring the doctrine in the English statutes; but from the well known construction which has always been given to our insolvent laws. These are, effectually, but bankrupt laws under another name. In this view of the matter too, I find myself confirmed by Mr. Bicknell, (Bickn. on Bankruptcy, p. 38 2d ed.) and the observations of Judge Battle. (Ex parte Ziegenfuss, 2 Iredell's N. Car. Rep. 463, 468, 9.) Wo .case was cited on the argument as holding the contrary. In the absence of a clear decision by the United States court declaring that a transfer of a debtor’s property in invitum,, made to satisfy his debt and made bona fide, prior to a decree declaring the debtor a bankrupt, shall be overreached by such a decree, I feel no serious, difficulty in saying that the former transfer should prevail. The result is that this motion must be granted.
Ordered accordingly.